UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

RANDY ANNY and
BARBARA FALGOUST ANNY

CRIMINAL ACTION

NO. 15-122-JJB-EWD

## RULING

This matter is before the Court on Motions to Suppress (Docs. 20 & 22) brought by the defendants, Randy Anny and Barbara Falgoust Anny. The United States of America ("the Government") filed an opposition (Doc. 27). The Court held evidentiary hearings on November 9, 2015, and February 22, 2016. After the hearings, the Government and both defendants submitted post-hearing memoranda (Docs. 63, 64, 67, & 70). For the reasons stated herein, the defendants' Motions to Suppress (Docs. 20 & 22) are **DENIED**.

**I.   BACKGROUND**

As a result of the fire, explosion, and release of oil from the Deepwater Horizon oil rig in the Gulf of Mexico in April 2010, BP Exploration and Production, Inc. ("BP") established the Gulf Coast Claims Facility ("the Claims Facility"). *See Indictment* ¶¶ 1–5, Doc. 1. The Claims Facility administered, processed, and settled claims by individuals and businesses that had been impacted by the oil spill. *Id.* Individuals and businesses sought payment from the Claims Center by submitting a Claim Form, and claimants received payment via wire transfer directly to the claimant's bank account or by check. *Id.*

On November 7, 2010, the defendants, Randy Anny and his wife Barbara Falgoust Anny, submitted a claim to the Claims Facility for "damages from contamination" to a boat and trailer. On November 12, 2010, the defendants submitted additional information, which included an

1

invoice from Kellium, LLC ("Kellium") purporting to show completed repairs to the boat and trailer. According to the invoice, dated July 8, 2010, Randy Anny was billed $7,800 and paid the invoice in full on August 27, 2010. The Claims Facility paid $7,800 to the defendants on June 14, 2011.

In 2013, FBI Special Agent Kobey McCall ("McCall") and Ascension Parish Sheriff's Office Captain Mike Toney ("Toney") (collectively, "the Agents") reviewed bank records associated with Randy Anny, and discovered the incoming wire deposit from the Claims Facility. *Feb. 22, 2016 Suppression Hr'g Tr.* 7, 77, Doc. 62. According to the Agents, the deposit raised suspicion because the defendants lived in Sorrento, Louisiana, and the Agents found it "odd that BP would be paying them when they're so far from the coast." *Id.*

McCall contacted a former FBI Special Agent David Welker, who was working at the Claims Facility, to obtain BP's records related to the payment. BP's records included the invoice from Kellium. After reviewing the invoice, the Agents researched Kellium in the Louisiana Secretary of State's records and found that Davele Davis ("Davis") was the sole owner-operator of the company. On December 17, 2013, the Agents interviewed Davis, who told the Agents that he did not repair the boat or trailer, that he had never received $7,800 from Randy Anny, and that the invoice was fraudulent. *Search Warrant Aff.* 4–5, Doc. 20-2.

Beginning in mid-2013 and continuing on numerous occasions afterward, the Agents drove by the defendant's residence and observed the boat and trailer in the driveway. *Search Warrant Aff.* 8, Doc. 20-2. Meanwhile, Randy Anny was interviewed on September 26, 2013, and among other things, he confirmed that he resided at the address where the boat was registered and where agents had observed the boat and trailer. *Id.*

2

In June 2014, the Agents obtained and reviewed boat registration information on the boat from the Louisiana Department of Wildlife and Fisheries. *Id.* at 8. The records revealed that Randy Anny renewed his registration for the boat on July 21, 2014.[1] *Id.* On February 5, 2015, and again on February 9, 2015, the Agents drove by Anny's residence and observed the boat parked in front of Anny's residence. *Id.* The search warrant was then submitted and authorized by Magistrate Judge Riedlinger on February 12, 2015. The Government executed the warrant on February 24, 2015, and seized the boat and trailer and had the boat inspected.

The defendants have been charged with two counts of wire fraud and one count of conspiracy to commit wire fraud, which allegedly occurred in connection with the BP claim for boat and trailer repairs. *See Indictment*, Doc. 1. The defendants have filed the instant Motions to Suppress (Docs. 20 & 22), arguing that the information in the affidavit supporting the warrant application was stale, and therefore, according to the defendants, the warrant was not based on probable cause and the resulting search was unlawful. In response, the Government argues that the affidavit establishes probable cause, and even if not, the *Leon* good faith exception to the exclusionary rule applies.

## II.   DISCUSSION

In order to issue a search warrant, a magistrate must determine that probable cause exists based on the totality of the circumstances. *See Bennett v. City of Grand Prairie*, 883 F.2d 400, 404 (5th Cir.1989). Probable cause exists when the facts and circumstances described in the search warrant application lead a person of reasonable caution to believe that a specifically described item subject to seizure will be found in the place to be searched. *See Brinegar v. United States*, 338 U.S.

---

[1] There was conflicting testimony as to whether the boat's registration expired or was renewed on July 21, 2014. Based on testimony of Toney and the printout of the NCIC request admitted into evidence from the Louisiana Department of Wildlife and Fisheries, the Court finds that the boat's registration was *renewed* on July 21, 2014.

3

160, 175–76 (1949). A magistrate's determination of probable cause "should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotations omitted) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Courts employ a two-step process to evaluate a defendant's motion to suppress when a search warrant is involved. First, the court must determine whether the *Leon* good faith exception to the exclusionary rule applies. *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897 (1984)). If the good faith exception does not apply, then the court proceeds to the second step in the analysis and determines whether the warrant was supported by probable cause. *United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004). If the good faith exception applies, however, the Court need not evaluate probable cause. *Id.* For the reasons stated in the Government's Post-Hearing Memorandum (Doc. 65-1), the Court finds that both the good faith exception applies and, alternatively, the search warrant affidavit was sufficient to establish probable cause.

The *Leon* good faith exception provides that evidence is admissible when it is obtained by law enforcement officials acting in objectively reasonable good faith reliance upon a search warrant, even if the affidavit on which the warrant was based was insufficient to establish probable cause. *See* 468 U.S. at 922–23; *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). Due to the "strong preference for warrants," the issuance of a warrant by a magistrate "normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *Leon*, 468 U.S. at 914, 922. However, an officer will not be able to claim objective good faith when, among other reasons: (1) the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, or (2) an officer relied on a warrant based on an affidavit so lacking in indicia

of probable cause as to render belief in its existence entirely unreasonable. *United States v. Rojas-Alvarez*, 451 F.3d 320, 330 (5th Cir. 2006).

The defendants first argue that the good faith exception does not apply because the magistrate judge was mislead by information in the affidavit. In support of this argument, the defendants point out that the search warrant affidavit describes the BP claim being paid on July 14, 20111, when in fact the claim was paid on *June* 14, 2011. The defendants also argue that the boat's registration was not *renewed* on July 21, 2014, but rather it *expired* on that date. Finally, the defendants assert several additional steps that the officers could have taken in the investigation. For the reasons stated in the Government's Post-Hearing Memorandum (Doc. 65-1), the Court finds that none of these circumstances are material to the investigation or to the magistrate judge's determination of probable cause. The Government contends, and the Court agrees, that aside from one typographical error, the search warrant affidavit was accurate and more than adequately describes the facts and circumstances that would lead a person of reasonable caution to believe that the evidence of the boat not being repaired would be found in the boat and trailer, which was located at the defendants' residence. Therefore, the Court finds that the magistrate judge was not mislead by the information in the affidavit.

Next, the defendants argue that the officers were not in good faith because the affidavit submitted in support of the search warrant was lacking in probable cause because the information contained therein was stale. "It is a fundamental principle of search and seizure law that the information given to the magistrate in the application for a search warrant must be timely. Probable cause must be found to exist at the time the warrant issues." *United States v. Minis*, 666 F.2d 134, 140 (5th Cir. 1982). In assessing this issue, the key point is that there is no "one size fits all" rule for determining staleness—probable cause depends on the particular facts of the case, including

the nature of the crime being investigated and the type of evidence being sought. *See, e.g.*, *United States v. Allen*, 625 F.3d 830, 842 (5th Cir. 2010). "Courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched." *Craig*, 861 F.2d at 822–23.

In the instant case, the underlying wire fraud was based on purported repairs to the boat and its trailer. Therefore, the relevant evidence as to whether the repairs claimed by the defendants had actually been performed would be revealed by a physical inspection of the boat, its engines, and the trailer. The physical properties of the boat and trailer are the types of evidence that would be expected to be discoverable for long periods of time. Moreover, the boat and trailer themselves are the type of evidence that can be expected to be found at the defendants' home over long periods of time—particularly here, when Agents had viewed the boat in front of the defendants' house over the course of nearly two years. The search warrant affidavit describes how, after becoming suspicious of the allegedly fraudulent payment, the Agents confirmed that the defendants still lived at the address where the boat was registered, that they still owned the boat, and that the boat was still parked outside the defendants' home just three days before the search warrant was authorized. Therefore, the Court finds that the information was not stale, and it was reasonable for the Agents to expect that the boat would still be found at the search location. The facts contained within the search warrant affidavit, taken together, are more than sufficient to render the Agents' reliance on the warrant objectively reasonable. Accordingly, the Agents acted in objectively good faith, and thus the evidence obtained through this Court's search warrant is admissible. *See Leon*, 468 U.S. at 922–23.

Having concluded that the good faith exception applies, the Court need not evaluate probable cause. *Froman*, 355 F.3d at 888. However, the Court notes that, for the reasons stated in

6

the Government's Post-Hearing Memorandum (Doc. 65-1), that the warrant in this case was supported by probable cause.

### III. CONCLUSION

For the reasons stated above, the defendants' Motions to Suppress (Docs. 20 & 22) are **DENIED**.

Signed in Baton Rouge, Louisiana, on May 23, 2016.

          **JUDGE JAMES J. BRADY**
          **UNITED STATES DISTRICT COURT**
          **MIDDLE DISTRICT OF LOUISIANA**